Bruce D. Katz, Esq. (BK-2041)
LAW OFFICES OF BRUCE D. KATZ
& ASSOCIATES
225 Broadway – 37th Floor
New York, NY 10007
Phone: (212)233-3434
Fax: (212)208-3060

*Attorneys for Defendant/Counterclaim-Plaintiff*
CGI of Nevada, Inc.
(d/b/a National Travel Planners)

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

| | | |
|---|---|---|
| TRAVEL PLANNERS, INC., | ) | ECF CASE |
| | ) | |
| Plaintiff, | ) | **AMENDED ANSWER AND** |
| | ) | **COUNTERCLAIMS** |
| v. | ) | (JURY TRIAL DEMANDED) |
| | ) | |
| NATIONAL TRAVEL PLANNERS, INC., | ) | |
| | ) | CIVIL ACTION NO. |
| Defendant, | ) | 07-CV-3119(GBD) |
| | ) | |
| and | ) | |
| | ) | |
| CGI OF NEVADA, INC. (D/B/A | ) | |
| NATIONAL TRAVEL PLANNERS), | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRAVEL PLANNERS, INC., | ) | |
| | ) | |
| Plaintiff/Counterclaim-Defendant, and | ) | |
| | ) | |
| THE INTERNATIONAL ASSOCIATION | ) | |
| OF CHIEFS OF POLICE, | ) | |
| AUTOMOTIVE SERVICE ASSOCIATION, | ) | |
| THE SPECTROSCOPY SOCIETY OF | ) | |
| PITTSBURGH and | ) | |
| THE SOCIETY FOR ANALYTICAL CHEMISTS | ) | |
| OF PITTSBURGH, | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

_____

Defendant, National Travel Planners, Inc. (hereinafter "NTP"), by its undersigned counsel, hereby file this Amended Answer and Counterclaims in response to the Complaint filed herein by Plaintiff, Travel Planners, Inc. (hereinafter "Plaintiff" or "TP").

NTP denies each and every allegation, matter and thing alleged in Plaintiff's Complaint unless hereinafter specifically admitted or otherwise answered.

## **NATURE OF THE ACTION**

1.  In this action, TP seeks injunctive and monetary relief against NTP for trademark and trade name infringement, passing off, dilution and tortious interference with existing and potential business relationships.

## **ANSWER:**

The allegations contained in Paragraph 1 of the Amended Complaint state legal conclusions to which no response is required.  However, to the extent a response is appropriate, NTP admits that Plaintiff seeks injunctive and monetary relief against NTP for trademark and trade name infringement, passing off, dilution and tortious interference with existing and potential business relationships.

2.  TP owns common law trademark rights in the TRAVEL PLANNERS trademark and trade name (hereinafter collectively referred to as the "TRAVEL PLANNERS Mark").  TP has been exclusively using its TRAVEL PLANNERS Mark for over twenty-five (25) years in connection with creating housing programs for various types of trade shows, conventions and meetings, and providing all services in connection therewith.  TP has been, and until now was, the only provider of such Event housing services under the TRAVEL PLANNERS Mark.  TP provides its TRAVEL PLANNERS Event housing services by way of agreements with the trade show/convention/meeting (collectively referred to as "Event") owner or organizes **[sic]**, and

works directly with the exhibitors who attend such Events to make sure that all exhibitor housing arrangements are handled expeditiously and efficiently by TP.

**<u>ANSWER:</u>**

NTP denies the allegations that: (1) Plaintiff "owns common law rights in the TRAVEL PLANNERS trademark and/or trade name"; and (2) Plaintiff "has been, and until now was, the only provider of such Event housing services under the TRAVEL PLANNERS Mark."

NTP further denies that Plaintiff has any exclusive rights whatsoever in the generic phrase "travel planners" for travel-related services of any kind, and denies that Plaintiff has exclusively used the generic phrase "travel planners" in connection with travel-related services to persons attending and/or exhibiting at trade shows, conventions or meetings, or any other services commonly provided by travel planners.

NTP is without knowledge or information sufficient to form a belief and, therefore, denies the allegations that: (1) Plaintiff "has been exclusively using its TRAVEL PLANNERS Mark for over twenty-five (25) years in connection with creating housing programs for various types of trade shows, conventions and meetings, and providing all services in connection therewith"; and that (2) Plaintiff "provides its TRAVEL PLANNERS Event housing services by way of agreements with the trade show/convention/meeting (collectively referred to as "Event") owner or organizes **[sic]**, and works directly with the exhibitors who attend such Events to make sure that all exhibitor housing arrangements are handled expeditiously and efficiently by TP".

3.  By virtue of its exclusive long time use of the TRAVEL PLANNERS Mark in the Event housing services field, TP's TRAVEL PLANNERS Mark has become well known as a provider of high quality and superior Event housing services.

**ANSWER:**

NTP denies the allegations contained in Paragraph 3 of the Complaint, and specifically denies that Plaintiff has any protectable interest the generic designation "travel planners".

4.  As the owner of the common law trademark and trade name rights for the TRAVEL PLANNERS Mark, including the associated goodwill, TP is entitled to, and by way of this action does, seeks injunctive relief against NTP's use of the NATIONAL TRAVEL PLANNERS trademark, business name and domain name that incorporates the TRAVEL PLANNERS Mark in connection with NTP's Event housing services.

**ANSWER:**

NTP denies the allegations contained in Paragraph 4 of the Complaint, and specifically denies that Plaintiff has any protectable interest the generic designation "travel planners."  NTP further specifically denies that it is engaged in "Event housing services" as that phrase is defined and/or used by Plaintiff in the Complaint.

5.  NTP's use of the virtually identical and confusingly similar designation NATIONAL TRAVEL PLANNERS in connection with its Event housing business, its solicitation of such business, as well as advertising and promotion of its Event housing services, constitutes trademark and trade name infringement, as well as passing off, under Section 43(a)(1) of the Lanham Act and the laws of the State of New York and other states, in violation of TP's rights in TP's TRAVEL PLANNERS Mark.

**ANSWER:**

NTP denies the allegations contained in Paragraph 5 of the Complaint, and specifically denies that it is engaged in the "Event housing business", or the solicitation of such business, as that phrase is defined and/or used by Plaintiff in the Complaint.  NTP admits that it uses the

4

designation NATIONAL TRAVEL PLANNERS in connection with its conventional travel services.

6. NTP's unauthorized use of the TRAVEL PLANNERS Mark has caused actual confusion in the Event housing marketplace among Event owners and organizers, as well as exhibitors who use such Event housing services. NTP's unauthorized use of the TRAVEL PLANNERS Mark is also likely to injure the fame and distinctiveness of TP's TRAVEL PLANNERS Mark in the Event housing services field, and is likely to dilute the distinctiveness of the TRAVEL PLANNERS Mark or otherwise cause injury to the Mark, in violation of New York State law, and other state laws, that prohibit dilution. Accordingly, TP seeks a permanent injunction against NTP to enjoin NTP's dilution of the TRAVEL PLANNERS Mark.

**ANSWER:**

NTP denies the allegations that: (1) it has engaged in any "unauthorized use of the TRAVEL PLANNERS mark"; and that (2) its use of the name National Travel Planners is "likely to injure the fame and distinctiveness of TP's TRAVEL PLANNERS Mark in the Event housing services field, and is likely to dilute the distinctiveness of the TRAVEL PLANNERS Mark or otherwise cause injury to the Mark, in violation of New York State law, and other state laws, that prohibit dilution."

NTP further denies the allegation that Plaintiff has asserted any claim for relief under any "other state laws, that prohibit dilution."

NTP is without knowledge or information sufficient to form a belief and, therefore, denies the allegation that any of its activities have "caused actual confusion in the Event housing marketplace among Event owners and organizers, as well as exhibitors who use such Event housing services."

## THE PARTIES

7.  Plaintiff, TP, is a New York corporation with its principal place of business at 381 Park Avenue South, New York, New York 10016.

**ANSWER:**

NTP is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 7 of the Complaint and, therefore, denies the same.

8.  Upon information and belief, Defendant, NTP, is a Nevada corporation with its principal place of business at 4795 S. Sanhill **[sic]** Rd., Las Vegas, Nevada 89121.

**ANSWER:**

NTP denies the allegations contained in Paragraph 8 of the Complaint, except admits that its principal place of business is located at 4795 S. Sandhill Rd., Las Vegas, Nevada 89121.

## JURISDICTION AND VENUE

9.  This is an action against NTP for injunctive relief and damages for trademark and trade name infringement, passing off, and state law dilution, as well as tortuous interference with existing and potential business relationships, arising under Title 15 of the United States Code and the laws of the State of New York and other states.

**ANSWER:**

The allegations contained in Paragraph 9 of the Complaint state legal conclusions to which no response is required. However, to the extent a response is appropriate, NTP admits that Plaintiffs allege that this "is an action against NTP for injunctive relief and damages for trademark and trade name infringement, passing off, and state law dilution, as well as tortuous interference with existing and potential business relationships, arising under Title 15 of the United States Code and the laws of the State of New York and other states." NTP denies that Plaintiff has pled any claim for relief arising under the laws of any "other states."

10.  This Court has jurisdiction of this civil action pursuant to 15 U.S.C. §1121 (action arising under the Federal Trademark Act), 28 U.S.C. §§ 1331 (federal question), 1338(a), (b) (Act of Congress relating to trademarks), and §1367(a) (supplemental jurisdiction).  The parties are of diverse citizenship, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

**ANSWER:**

NTP denies the allegations contained in Paragraph 10 of the Complaint, except admits that jurisdiction purports to be conferred pursuant to Title 15 U.S.C. §1121 and Title 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and pursuant to the principles of supplemental jurisdiction under Title 28 U.S.C. §1367(a).

11.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) as the acts alleged herein have substantially occurred within this District and the claims asserted substantially arise in this District.

**ANSWER:**

NTP denies the allegations contained in Paragraph 11 of the Complaint, and specifically denies that any of the acts alleged herein have occurred substantially within this District.  NTP admits that venue purports to be conferred by Title 28 U.S.C. §§ 1391(b) and (c).

12.  This Court has personal jurisdiction over NTP because it does business and offers to do business in this District, and has committed the alleged wrongful acts both within and outside of this District, and caused substantial injury to TP in this District.  NTP also advertises in this District through its website.

**ANSWER:**

NTP denies the allegations contained in Paragraph 12 of the Complaint.

## FACTS COMMON TO ALL CAUSES OF ACTION

### *Plaintiff TP*

13.  TP has been exclusively using its TRAVEL PLANNERS Mark for over twenty-five (25) years in connection with creating housing programs for trade shows, conventions and meetings, and providing all services in connection therewith.  TP provides its Event housing services by way of agreement with the trade show/convention/meeting owner or organizer, and works directly with the exhibitor **[sic]** who attend the events to make sure that all exhibitor housing arrangements are handled expeditiously and efficiently.  TP's agreements with the convention owners/organizers establish TP as the "exclusive official housing company" for the particular trade show, convention, or meeting and all exhibitors are advised to utilize TP for their Event housing needs.

### ANSWER:

NTP denies the allegations that: (1) plaintiff "has been exclusively using its TRAVEL PLANNERS Mark for over twenty-five (25) years in connection with creating housing programs for trade shows, conventions and meetings, and providing all services in connection therewith".

NTP is without knowledge or information sufficient to form a belief and, therefore, denies the allegations that: (1) TP provides its Event housing services by way of agreement with the trade show/convention/meeting owner or organizer, and works directly with the exhibitor **[sic]** who attend the events to make sure that all exhibitor housing arrangements are handled expeditiously and efficiently; and that (2) "TP's agreements with the convention owners/ organizers establish TP as the 'exclusive official housing company' for the particular trade show, convention, or meeting and all exhibitors are advised to utilize TP for their Event housing needs."

14.  TP has been, and until now was, the only provider of Event housing services under the TRAVEL PLANNERS Mark.  TP's extensive and exclusive use of its TRAVEL PLANNERS Mark in the Event housing service field has become well known, and TP's services under the Mark are associated with high quality and superior Event housing services.

**ANSWER:**

NTP denies the allegations contained in Paragraph 14 of the Complaint.

***Defendant NTP***

15.  Upon information and belief, and based upon a review of NTP's website, NTP has been in business "for over 5 years."

**ANSWER:**

NTP admits the allegations contained in Paragraph 15 of the Complaint.

16.  Upon information and belief, NTP's business, unlike TP's business, does not focus on Event housing services, but rather appears to provide traditional travel agent services to book vacation homes and condominiums.

**ANSWER:**

NTP denies the allegations contained in Paragraph 16 of the Complaint, except admits that its business does not focus on "Event housing services" as that term is defined and or used by Plaintiff in the Complaint.

17.  Upon information and belief, NTP only began providing Event housing services under the NATIONAL TRAVEL PLANNERS designation in October 2006.  Before then, despite TP's extensive knowledge of its Event housing competitors and involvement in the Event housing industry, TP had not heard of NTP or seen the NATIONAL TRAVEL PLANNERS designation.

**ANSWER:**

NTP denies the allegations contained in Paragraph 17 of the Complaint, except that NTP is without knowledge or information sufficient to form a belief and, therefore, denies the allegations that "[b]efore then, despite TP's extensive knowledge of its Event housing competitors and involvement in the Event housing industry, TP had not heard of NTP or seen the NATIONAL TRAVEL PLANNERS designation."

18.  NTP uses its NATIONAL TRAVEL PLANNERS designation in connection with its Event housing business, its solicitation of such business, as well as in connection with its advertising and promotion of its Event housing services.  The NATIONAL TRAVEL PLANNERS designation also serves as NTP's business name or trade name.

**ANSWER:**

NTP denies the allegations contained in Paragraph 18 of the Complaint, except admits that NTP uses the designation NATIONAL TRAVEL PLANNERS in connection with its corporate and individual travel planning services, its solicitations for such services, and as its business name or trade name.

### *NTP's Infringing Activity and Wrongful Conduct*

19.  Upon information and belief, NTP has used and is using its NATIONAL TRAVEL PLANNERS designation and name to confuse Event owners and organizers, as well as attending Events exhibitors, that it is TP, or associated with TP and the services TP provides under TP's TRAVEL PLANNERS Mark.

**ANSWER:**

NTP denies the allegations contained in Paragraph 19 of the Complaint, and specifically denies that Plaintiff has any protectable interest the generic designation "travel planners".

20.  NTP has contacted exhibitors who were planning to attend PITTCON 2007, a Pittsburgh trade show/conference.  TP was named the exclusive official housing company for PITTCON 2007.  NTP approached exhibitors to inquire if they had made their housing arrangements and/or to verify their booking arrangements.  NTP representatives indicated they were affiliated with TP or that NTP was the "exclusive official housing company."  The exhibitors NTP contacted were actually confused by NTP, as well as NTP's use of the TRAVEL PLANNERS Mark in connection with NTP's Event housing services.  In a few instances the confused exhibitor actually utilized the NTP Event housing services believing they were using TP's TRAVEL PLANNERS Event housing services.  Indeed, in at least one known instance, an exhibitor complained about NTP, wrongly believing it was TP, and the exhibitor has had a very difficult time obtaining the refund it deserved from NTP.

**ANSWER:**

NTP is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 20 of the Complaint and, therefore, denies the same; except NTP specifically denies the allegation that "NTP representatives indicated they were affiliated with TP or that NTP was the "exclusive official housing company."

21.  At the INFOCOMM 2006 conference, where TP was again named the "exclusive official housing company," several exhibitors received calls from NTP inquiring about their Event housing arrangements resulting in confusion as to whether there was an affiliation between NTP and TP.

**ANSWER:**

NTP is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 21 of the Complaint and, therefore, denies the same.

22.  In January 2007, for the WINTER FANCY FOOD SHOW in San Francisco, California, TP was again named as the "exclusive official housing company."  NTP contacted exhibitors to inquire about their event housing arrangements.  In one instance, an exhibitor was actually deceived into booking rooms for the event through NTP, only to later learn that NTP had not booked any rooms for the exhibitor.  The exhibitor was adamant that it booked the rooms through TP and utilized the TRAVEL PLANNERS Event housing services, and only learned after an in depth investigation that it was NTP.

**ANSWER:**

NTP is without knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 22 of the Complaint and, therefore, denies the same.

## COUNT I

### Federal Trademark and Trade Name Infringement

23.  TP repeats and re-alleges each and every allegation contained in paragraphs 1 through 22 hereof as if fully set forth herein.

**ANSWER:**

NTP repeats and realleges the averments set forth in Paragraphs 1 through 22 as if more fully set forth herein.

24.  NTP's use in commerce of the NATIONAL TRAVEL PLANNERS as a designation and as a trade name constitutes trademark and trade name infringement in violation of TP's common law rights in the TRAVEL PLANNERS Mark in that NTP's use has actually caused, and is likely to continue to cause confusion as to whether the services offered by NTP under the designations originate with or are sponsored or approved by, or otherwise connected with TP, in violation of Section 43(a)(l)(A) of the United States Trademark Act of 1946, as amended, 15 U.S.C. §1125(a)(l)(A).

**ANSWER:**

NTP denies the allegations contained in Paragraph 24 of the Complaint.

25. NTP's unauthorized use of the NATIONAL TRAVEL PLANNERS designation and trade name is not being made in good faith.

**ANSWER:**

NTP denies the allegations contained in Paragraph 25 of the Complaint.

26. Upon information and belief, NTP has intentionally and with bad faith carried out the aforementioned activities.

**ANSWER:**

NTP denies the allegations contained in Paragraph 26 of the Complaint.

27. The aforesaid actions of NTP have caused, and, unless enjoined, will continue to cause monetary damage and irreparable injury for which there is no adequate remedy at law.

**ANSWER:**

NTP denies the allegations contained in Paragraph 27 of the Complaint.

## COUNT II

### NTP's Passing Off

28. TP repeats and re-alleges each and every allegation contained in paragraphs 1 through 27 hereof as if fully set forth herein.

**ANSWER:**

NTP repeats and realleges the averments set forth in Paragraphs 1 through 27 as if more fully set forth herein.

29. NTP's use in commerce of the designation and business name NATIONAL TRAVEL PLANNERS in its solicitation and marketing, as well as in its domain name www.nationaltravelplanners.com, to solicit business away from TP constitutes passing off and

false designation of origin, and false or misleading descriptions of fact that wrongly and falsely

designate that NTP is affiliated or connected with, or sponsored or authorized by TP to provide

TP's TRAVEL PLANNERS Event housing services, when, in fact, that is not true, in violation of

Section 43(a)(l)(A)of the United States Trademark Act of 1946, as amended, 15 U.S.C.

§1125(a)(l)(A).

**ANSWER:**

NTP denies the allegations contained in Paragraph 29 of the Complaint.

30. Upon information and belief, NTP intentionally and with bad faith carried out the

aforementioned activities.

**ANSWER:**

NTP denies the allegations contained in Paragraph 30 of the Complaint.

31. NTP's unauthorized use is causing competitive injury to TP in that it makes the

TRAVEL PLANNERS Mark and associated services less valuable and also deprives TP of the

additional business opportunities being diverted from TP to NTP due to NTP's wrongful conduct.

**ANSWER:**

NTP denies the allegations contained in Paragraph 31 of the Complaint.

32. The aforesaid actions of NTP have caused, and, unless enjoined, will continue to

cause monetary damage and irreparable injury for which there is no adequate remedy at law.

**ANSWER:**

NTP denies the allegations contained in Paragraph 32 of the Complaint.

## COUNT III

### State Trademark and Trade Name Infringement Against NTP

33. TP repeats and re-alleges each and every allegation contained in paragraphs 1

through 32 hereof as if fully set forth herein.

**ANSWER:**

NTP repeats and realleges the averments set forth in Paragraphs 1 through 32 as if more fully set forth herein.

34.  NTP's use in commerce of the NATIONAL TRAVEL PLANNERS as a designation and as a trade name constitutes trademark and trade name infringement in violation of TP's New York State common law rights in the TRAVEL PLANNERS Mark in that NTP's use has caused, and is likely to continue to cause confusion as to whether the services offered by NTP under the NATIONAL TRAVEL PLANNERS designation originate with or are sponsored or approved by, or otherwise connected with TP and TP's TRAVEL PLANNERS Event housing services.

**ANSWER:**

NTP denies the allegations contained in Paragraph 34 of the Complaint.

35.  NTP's unauthorized use of the NATIONAL TRAVEL PLANNERS designation and trade name is not being made in good faith.

**ANSWER:**

NTP denies the allegations contained in Paragraph 35 of the Complaint.

36.  Upon information and belief, NTP has intentionally and with bad faith carried out the aforementioned activities.

**ANSWER:**

NTP denies the allegations contained in Paragraph 36 of the Complaint.

37.  The aforesaid actions of NTP have caused, and, unless enjoined, will continue to cause monetary damage and irreparable injury for which there is no adequate remedy at law.

**ANSWER:**

NTP denies the allegations contained in Paragraph 37 of the Complaint.

## COUNT IV

## State Dilution Against NTP

38.  TP repeats and re-alleges each and every allegation contained in paragraphs 1 through 37 hereof as if fully set forth herein.

**ANSWER:**

NTP repeats and realleges the averments set forth in Paragraphs 1 through 37 as if more fully set forth herein.

39.  The TRAVEL PLANNERS Mark is a distinctive trade name with a strong secondary meaning in the Event housing services industry.

**ANSWER:**

NTP denies the allegations contained in Paragraph 39 of the Complaint.

40.  NTP's deliberate and intentional use in commerce of the famous and distinctive TRAVEL PLANNERS Mark constitutes, under the laws of the State of New York, as well as laws of other states, dilution of the distinctiveness of TP's TRAVEL PLANNERS Mark and is also likely to injure the reputation of TP as the owner of the goodwill associated with the TRAVEL PLANNERS Mark.

**ANSWER:**

NTP denies the allegations contained in Paragraph 40 of the Complaint.

41.  The aforesaid actions of NTP have caused, and unless enjoined, will continue to cause TP monetary damage in an amount to be determined at trial and irreparable injury for which there is no adequate remedy at law.

**ANSWER:**

NTP denies the allegations contained in Paragraph 41 of the Complaint.

**COUNT V**

**NTP's Tortious Interference**

42.  TP repeats and re-alleges each and every allegation contained in paragraphs 1 through 41 hereof as is **[sic]** fully set forth herein.

**ANSWER:**

NTP repeats and realleges the averments set forth in Paragraphs 1 through 41 as if more fully set forth herein.

43.  NTP is and was fully aware of TP's existing business relationships with the Events owners and organizers that had agreements or other arrangements with TP whereby TP was named the "exclusive official housing company" for the particular Events.  TP had a reasonable expectation of obtaining the business that NTP obtained by virtue of its wrongful acts, and TP reasonably expects a continued business relationship with other Events owners and organizers who have named TP as the "exclusive official housing company."  NTP knew of and presently knows of TP's relationships and TP's expectancy of the continued business relationships.  NTP is acting intentionally to interfere with and take steps to divert the business and relationships between TP and the Events organizers and owners, as well as the exhibitors who attend such Events, and NTP's interference has caused, and will continue to cause damage to TP and its reputation for high quality superior Event housing services.

**ANSWER:**

NTP denies the allegations contained in Paragraph 43 of the Complaint.

44.  The above-described acts of NTP are and were knowing, willful, improper and illegal.

**ANSWER:**

NTP denies the allegations contained in Paragraph 44 of the Complaint.

17

45.  By reason of the foregoing, TP has been or will be damaged in an amount not less than $500,000, with the exact amount of TP's damages to be determined at trial.

**ANSWER:**

NTP denies the allegations contained in Paragraph 45 of the Complaint.

## ALLEGED PRAYER FOR RELIEF

46.  NTP denies the allegations contained in subparagraphs A through C of the WHEREFORE clause following Paragraph 45 of the Complaint.

## DEMAND FOR JURY TRIAL

47.  In response to Plaintiff's jury demand, NTP denies that Plaintiff is entitled to trial by jury on all issues, all claimed damages and/or for all relief sought as certain allegations contained in the Complaint call for legal conclusions.  NTP hereby demands a trial by jury for all issues so triable.

## AFFIRMATIVE DEFENSES

(Failure to State a Claim)

48.  Plaintiff's Complaint fails to state a claim upon which relief may be granted as to one or more of Counts I – V.

(Defective Pleading)

49.  Plaintiff's complaint alleges violations of state law without sufficient specificity, such as by alleging violations of the laws of "other states" without identifying the "other" state or the law(s) allegedly violated by NTP.

(Lack of Subject Matter Jurisdiction)

50.  Plaintiff's federal claims lack merit and this court lacks subject matter jurisdiction over Plaintiff's state claims.

(Collateral Estoppel/Preclusion)

51.  Counts I-V are barred by the doctrine of preclusion, collateral estoppel and/or *res judicata* since the issues in this case have been previously adjudicated by the federal courts.

(Plaintiff's Lack of Standing)

52.  Plaintiff lacks standing to sue for infringement of the asserted trademark(s) because it has no ownership interest therein.

(Personal Jurisdiction)

53.  This Court has no personal jurisdiction over NTP.

(Improper Venue)

54.  Venue is improper in this district.

(Unclean Hands)

55.  Plaintiff's claims may be barred, in whole or in part, from any and all recovery on each and every alleged cause of action by virtue of the equitable doctrine of unclean hands.

(Defendants' Innocent Conduct)

56.  NTP has not done any act or thing and is not proposing to do any act or thing in violation of any rights validly belonging to Plaintiff.

(No Willfulness)

57.  NTP had no knowledge and/or notice of the rights alleged in the Complaint before being served with the Complaint herein and, therefore, any infringement cannot be deemed willful.

(Failure to Mark)

58.  On information and belief, Plaintiff has failed to mark its goods and/or services and, therefore, is not entitled to monetary damages and/or equitable relief.

(Invalid and Unenforceable)

59. On information and belief, Plaintiff's alleged common law trademark and/or trade name TRAVEL PLANNERS is invalid and/or unprotectable for reasons including, but not limited to, the following:

a. The alleged common law trademark and/or trade name is a generic name for the goods and/or services with which the mark is used by Plaintiff; and/or

b. The alleged common law trademark and/or trade name is merely descriptive of the goods and/or services with which the mark is used by Plaintiff; and/or

c. The alleged common law trademark has not been in continuous use for the period of time alleged by Plaintiff; and/or

d. Plaintiff has not established secondary meaning in the alleged common law trademark and/or trade name TRAVEL PLANNERS.

(Doctrine of Waiver)

60. Plaintiff's claims may be barred, in whole or in part, based on the doctrine of waiver.

(Doctrine of Estoppel)

61. Plaintiff's claims may be barred, in whole or in part, based on the doctrine of estoppel.

(Doctrine of Laches)

62. Plaintiff's claims may be barred, in whole or in part, based on the doctrine of laches.

## PRAYER FOR RELIEF

WHEREFORE, NTP prays:

a. That this Court find against Plaintiff and deny all relief requested in the Complaint.

b. That this Court declare Plaintiff's alleged common law trademark TRAVEL PLANNERS invalid and not infringed by NTP.

c. That this Court find for NTP on each of its affirmative defenses.

d. That this Court deny Plaintiff's request for compensatory, punitive and treble damages, attorneys' fees and costs.

e. That this Court grant NTP its attorneys' fees and costs.

f. That this Court grant NTP such other and further relief as the Court may deem just, proper and equitable.

## COUNTERCLAIMS

63.  Counterclaim-Plaintiff, CGI of Nevada, Inc. (d/b/a National Travel Planners) (hereinafter "NTP"), brings the following Counterclaims without waiving its affirmative defenses relating to personal jurisdiction and venue.  These Counterclaims seek: (1) a declaratory judgment that Plaintiff/Counterfeit-Defendant has no rights in the generic designation "travel planners"; (2) a declaratory judgment that NTP is not infringing any of Plaintiff/Counterclaim-Defendant's rights in the designation "travel planners" and is not engaging in palming off or dilution under the Lanham Act or laws of the state of New York, or any other state, or tortiously interfering with any prospective economic advantage of Plaintiff.  NTP's counterclaims further allege claims against Plaintiff/Counterclaim Defendant and the other named Counterclaim-Defendants for: (3) defamation - libel *per se*; (4) defamation - trade libel; (5) trade libel/false advertising under section 43(a) of the Lanham Act; (6) tortuous interference with existing contractual relations; (7) tortuous interference with prospective advantageous business relationship; (8) unfair competition; (9) deceptive trade practices; (10) *per se* violations of Section 1 of the Sherman Act; and (11) rule of reason violations of Section 1 of the Sherman Act.

## JURISDICTION

64. This is a claim for, *inter alia,* a declaratory judgment. This Court has subject matter jurisdiction pursuant to Title 28 U.S.C. §§ 2201 and 2202, under the Trademark Laws of the United States pursuant to Title 15 U.S.C. §1051 *et seq.*, and under Fed.R.Civ.P. 13. Subject matter jurisdiction is conferred on this Court by, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a), 15 U.S.C. §1121 and under 28 U.S.C. §1367 and the principles of supplemental jurisdiction with respect to the common law and state claims. There is an actual controversy between the parties concerning the validity and scope of the trademark(s) alleged in the Complaint, and NTP's liability for infringement thereof. Plaintiff has submitted to the personal jurisdiction of this Court.

## THE PARTIES

65. Counterclaim-Plaintiff, CGI of Nevada, Inc. (d/b/a National Travel Planners) (hereinafter "NTP") is a corporation organized and existing under the laws of the state of Nevada and having a principal place of business at 4795 S. Sandhill Rd., Las Vegas, Nevada, 89121.

66. Upon information and belief, Plaintiff/Counterclaim-Defendant, Travel Planners, Inc. (hereinafter, "Plaintiff"), is a corporation organized and existing under the laws of the state of New York and having a principal place of business located at 381 Park Avenue South, New York, New York, 10016.

67. Upon information and belief, Counterclaim-Defendant, The International Association of Chiefs of Police (hereinafter, "IACP"), is a corporation organized and existing under the laws of the state of Virginia and having a principal place of business located at 515 North Washington Street, Alexandria, Virginian 22314.

68. Upon information and belief, Counterclaim-Defendant, Automotive Service Association (hereinafter, "ASA"), is a corporation organized and existing under the laws of the

state of Texas and having a principal place of business located at 1901 Airport Freeway, Bedford, Texas, 76021-5732.

69.  Upon information and belief, Counterclaim-Defendant, The Spectroscopy Society of Pittsburgh (hereinafter, "SSP"), is a corporation organized and existing under the laws of the state of Pennsylvania and having a principal place of business located at 300 Penn Center Blvd., Suite 332, Pittsburgh, Pennsylvania, 15235-5503.

70.  Upon information and belief, Counterclaim-Defendant, The Society for Analytical Chemists of Pittsburgh (hereinafter, "SACP"), is a corporation organized and existing under the laws of the state of Pennsylvania and having a principal place of business located at 300 Penn Center Blvd., Suite 332, Pittsburgh, Pennsylvania, 15235-5503.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTERCLAIMS

71.  Plaintiff alleges that it is the owner of common law rights in the designation TRAVEL PLANNERS.

72.  Upon information and belief, Plaintiff does not have any common law rights in the designation TRAVEL PLANNERS and/or any such mark is invalid for reasons including, but not limited to, the following:

a. The alleged common law trademark and/or trade name TRAVEL PLANNERS is a generic name for the goods and/or services with which the mark is used by Plaintiff; and/or

b. The alleged common law trademark and/or trade name TRAVEL PLANNERS is merely descriptive of the goods and/or services with which the mark is used by Plaintiff; and/or

c. The alleged common law trademark and/or trade name TRAVEL PLANNERS has not been in continuous use for the period of time alleged by Plaintiff; and/or

d. Plaintiff has not established secondary meaning in the alleged common law trademark and/or trade name TRAVEL PLANNERS.

73.  Upon information and belief, the designation "travel planner" is a generic name for an individual or entity engaged, for instance, in travel and/or vacation planning, reservation and/or booking services (hereinafter referred to as "travel planning services").  Upon information and belief, the designation "travel planners" is a generic name for a group of individuals or an organization engaged in travel planning services.  "Travel planner" is also a generic designation for a resource (other than a living being) used for travel planning.

74.  For instance, attached as **Exhibit A** hereto is a printout from the website "www.yellowpages.com" showing that there is, or was, an organization headquartered in Hingham, Massachusetts known as the "National Association of Senior Travel Planners" comprised of individuals engaged in travel planning services (who are referred to by the public as "travel planners").

### Widespread Generic Use of "Travel Planners"

75.  There is widespread third-party use of the designations "travel planners", "travel planner", "travel planning" in their generic manner described above.  Some such uses are described below.

76.  For instance, attached hereto as **Exhibit B** are copies of printouts of an internet search for the phrase "travel planners" (without quotes) conducted on May 31, 2007 using the Yahoo search engine.  Specifically, Exhibit B contains only the first 500 results of the search, which, as can be seen, yielded "about 10,500,000" results.  Attached hereto as **Exhibit C** are printouts of approximately the first 50 of the 500 websites shown in Exhibit B.

77.  As can readily be seen from a review of Exhibits B and C, the designation "travel planners" is in widespread generic use.

78.  Attached hereto as **Exhibit D** is a printout of search results from a search of the Trademarkscan database for all registered trademarks (subsisting and canceled) and trademark

applications (pending and abandoned) in North America having the designation "travel plan…"

within their description of goods and/or services.  The search uncovered 701 such marks.

Attached hereto as **Exhibit E** are full printouts of the first 50 trademark files from the list of 701

marks contained in Exhibit D.  The results show that the designation "travel planner" is used on a

widespread basis in a generic manner.

79.  Attached hereto as **Exhibit F** is a printout of search results from a search of the

Trademarkscan database for all registered U.S. federal trademarks (subsisting and canceled) and

U.S. trademark applications (pending and abandoned) having the designation "travel planners"

within their description of goods and/or services.  The search uncovered 95 such marks.

Attached hereto as **Exhibit G** are full printouts of all of the 95 trademark files from the list

contained in Exhibit F.  The results show that the designation "travel planners" is used on a

widespread basis in a generic manner.

80.  Significantly, Plaintiff does not have a federal trademark registration for TRAVEL

PLANNERS and has never sought to register the designation TRAVEL PLANNERS as a

trademark or service mark in the United States.  However, Plaintiff has sought and obtained

numerous registrations for other trademarks and/or service marks.  In fact, Plaintiff, through its

counsel of record in this case, has filed at least twenty-four trademark applications for marks

*other* than TRAVEL PLANNERS.

81.  Thus, upon information and belief, Plaintiff and its counsel are aware that the

designation TRAVEL PLANNERS is a generic and/or highly descriptive term that is incapable

of registration as a trademark in the United States.

## COUNT I – (AGAINST PLAINTIFF)

## DECLARATION OF INVALIDITY OF PLAINTIFF'S ALLEGED TRADEMARK

82.  NTP repeats and realleges each and every allegation contained in paragraphs 63 through 81 above as if more fully set forth herein.

83.  On information and belief, Plaintiff's alleged common law trademark TRAVEL PLANNERS is a generic name for the services with which this mark is used by Plaintiff.

84.  On information and belief, Plaintiff's alleged common law trademark TRAVEL PLANNERS has not been in continuous use in commerce for the period of time alleged by Plaintiff.

85.  On information and belief, Plaintiff's alleged common law trademark TRAVEL PLANNERS has not acquired secondary meaning.

## COUNT II – (AGAINST PLAINTIFF)

## DECLARATION OF NON-INFRINGEMENT

86.  NTP repeats and realleges each and every allegation contained in paragraphs 63 through 85 above as if more fully set forth herein.

87.  NTP's use of the designation NATIONAL TRAVEL PLANNERS does not infringe any valid trademark rights owned by Plaintiff.

88.  NTP has not infringed, has not contributed to the infringement, and has not induced infringement of any valid trademark rights owned by Plaintiff.

## COUNT III

## (AGAINST PLAINTIFF AND ALL COUNTERCLAIM-DEFENDANTS)

## DEFAMATION – LIBEL *PER SE*

89.  NTP repeats and realleges each and every allegation contained in paragraphs 63 through 88 above as if more fully set forth herein.

90.  Plaintiff and Counterclaim-Defendants, The International Association of Chiefs of Police ("IACP"), Automotive Service Association ("ASA"), The Spectroscopy Society of Pittsburgh ("SSP") and The Society for Analytical Chemists of Pittsburgh ("SACP"), have conspired to and have actually engaged in a widespread pattern of defamatory conduct aimed at irreparably damaging NTP's business reputation in the trade and with the consuming public, misleading and deceiving consumers into believing that the are at risk if they utilize NTP's services instead of Plaintiff's services, and severely damaging NTP's ability to conduct business. Plaintiff and Counterclaim-Defendants IACP, ASA, SSP and SACP have set out to achieve these goals by publishing and/or causing to be published knowingly false, fraudulent, inflammatory and defamatory verbal and written statements, with malice, to the trade and the consuming public regarding the quality, value and reliability of NTP's travel services and NTP's veracity, integrity and legitimacy as a business.  Plaintiff has communicated these defamatory statements directly to IACP, ASA, SSP and SACP, and others in the trade who have cooperated and conspired with Plaintiff in furtherance of said pattern of conduct by publishing defamatory statements concerning NTP to members of the consuming public, including NTP's actual and prospective customers.

91.  More specifically, on information and belief, Plaintiff is engaged in the business, *inter alia,* of providing travel-related services to exhibitors and attendees at various trade shows, exhibitions, business conventions, and the like.  Generally, on information and belief, such trade

shows, exhibitions and business conventions are organized by third parties who contract with Plaintiff to provide travel and housing services to trade show and convention exhibitors and attendees.

92. For instance, Plaintiff has contracted with Counterclaim-Defendants IACP, ASA, SSP and SACP to offer hotel reservation services to exhibitors and attendees at upcoming annual expositions hosted by Counterclaim-Defendants, IACP, ASA, SSP and SACP.

93. On information and belief, the contracts between Plaintiff and third parties, including IACP, ASA, SSP and SACP, provide that Plaintiff is the "official" travel agent for a given event hosted by a third party and/or that plaintiff has the "exclusive" right to provide travel services to exhibitors and/or attendees at trade shows and/or conventions hosted by such third parties.  In exchange for exclusive rights, Plaintiff is required to share its profits with the respective third party.

94. On information and belief, Plaintiff receives a fee for each hotel room it reserves for an exhibitor or attendee and shares this fee with the trade show organizer, including Counterclaim-Defendants IACP, ASA, SSP and SACP.

95. Websites hosted by or on behalf of such third parties relating to a specific trade show or convention generally include an interactive hotel reservation page to allow exhibitors and attendees to make hotel reservations, through Plaintiff, for their stay at a specific trade show or convention.

96. For instance, Counterclaim-Defendant IACP is hosting a 114th annual "IAPC Conference" in New Orleans on October 13-17, 2007.  Copies of printouts of the home page and the hotel reservation pages of the website maintained to promote this annual conference are attached hereto as **Exhibit H**.

97.  Similarly, Counterclaim-Defendant ASA is hosting a 25th annual International Autobody Congress ("NACE") exhibition in Las Vegas on October 31 – November 3, 2007. Copies of printouts of the home page and the hotel reservation pages of the website maintained to promote this annual conference are attached hereto as **Exhibit I**.

98.  Additionally, Counterclaim-Defendants SSP and SACP are hosting Pittcon Conference and Expo 2008 in New Orleans on March 1-7, 2008.  Copies of printouts of the home page and hotel reservation pages of the website maintained to promote this annual conference are attached hereto as **Exhibit J**.

99.  As illustrated in Exhibits H-J, trade show organizers including Counterclaim-Defendants IACP, ASA, SSP and SACP, advertise and promote Plaintiff's services in a manner calculated to lead trade show and convention exhibitors and attendees to believe that Plaintiff is the only legitimate, authorized, or "official" travel agent, and that Plaintiff's services are somehow superior, more secure, and less costly than services offered by any other travel agents.

100.  In fact, however, Plaintiff is not official in any manner.  Nor are its travel services superior to those of other travel service providers.  Nor are Plaintiff's services any more secure than others, or less costly than others.

101.  Nonetheless, with the cooperation of trade show organizers such as Counterclaim-Defendants IACP, ASA, SSP and SACP, Plaintiff was long able to maintain a virtual monopoly in travel services provided to trade show and convention exhibitors and attendees hosted by third parties with whom Plaintiff had contracted.

102.  Although Plaintiff's contracts with IACP, ASA, SSP and SACP purport to provide Plaintiff with the exclusive right to provide travel service to exhibitors and/or attendees, Plaintiff has no such exclusive rights.  Trade show and convention exhibitors and attendees are free to make any travel arrangements they desire.

103. Defendant, NTP, provides travel services to individuals and business.  NTP's travel services include, but are not limited to, providing travel services to exhibitors and attendees at trade shows and business conventions.

104. On information and belief, in order eliminate competition from NTP and others, Plaintiff has published to third parties including Counterclaim-Defendants IACP, ASA, SSP and SACP, various derogatory and defamatory verbal and written statements, including the statements that that NTP is dishonest, fraudulent, and a scam.

105. On information and belief, various principals and employees of Plaintiff have encouraged third parties, including Counterclaim-Defendants IACP, ASA SSP and SACP, to post derogatory and defamatory statements concerning NTP on the websites they use to promote their trade shows and conventions.  The purpose of this is to ensure that NTP's actual and potential customers will see such statements and decline to use NTP's travel services.

106. For instance, one act of defamation of which NTP is aware occurred when Plaintiff and Counterclaim-Defendant IAPC posted and/or caused to be posted on the internet statements that NTP is engaged in "false and fraudulent housing claims."  An example of one such written statement published by Plaintiff and Counterclaim-Defendant IACP appears at the website of the 2007 IAPC conference (www.theiacpconference.org), organized by Counterclaim-Defendant IACP.  Copies of the website pages containing the defamatory content on the IAPC from this website are attached as the last two pages of Exhibit H.

107. In their defamatory statements posted on the IAPC website (last two pages of Exhibit H), Plaintiff and Counterclaim-Defendant IPAC refer to NTP's conduct as "false and fraudulent" and accuse NTP of "deliberately trying to create confusion".

108. The statements included in Exhibit H include false, fraudulent and defamatory accusations concerning NTP, including: (1) that NTP is engaged in "false and fraudulent housing

claims"; (2) that NTP is "deliberately trying to create confusion"; (3) conveying this information in the form of a so-called "Housing Alert", which falsely suggests that consumers need to be "alerted" and on guard of some alleged wrongdoing by NTP; (4) falsely indicating that Plaintiff has some "official" authority and that NTP does not; (5) falsely accusing NTP of being "unscrupulous"; and (6) falsely advising consumes that "[i]t is not in your best interest to book rooms through these companies for the following reasons".

109.   The statement attached as Exhibit H also contains a false and misleading comparison between the services offered by NTP and those offered by Plaintiff, including the following comments:

"they simply contact another source and resell a room from them"; "Room rates must be fully prepaid, are non-refundable and are subject to steep change fees"; "Room types are not guaranteed and are usually the lowest room category"; "Reservations made through these companies are not supported by IACP"; "Any housing company outside of Travel Planners is not endorsed by show management and therefore cannot guarantee room availability or rates"; "The best way to ensure you're booking your hotel through proper channels is to follow the housing link located on http://www.theiacpconference.org . Only there will you receive these exclusive IACP 2007 benefits"; "1. No fees or penalties to make changes to your reservations.  2. Refundable deposit if cancelled within the hotel's cancellation guidelines.  3. Call center support to assist you prior to your arrival and on-site staff to assist you while at IACP.  4. You support the show and continue to aid us in securing dates and space for future shows."

110.   The statements made about NTP by Plaintiff and Counterclaim-Defendants IAPC, SSP and SACP, including the content of the written statement contained in Exhibit H are false, fraudulent and defamatory, and are libelous *per se*.

111.   Another act of defamation of which NTP is aware occurred when Plaintiff and Counterclaim-Defendant ASA emailed and/or caused an email to be transmitted to exhibitors at the 2007 International Autobody Congress and Exposition (NACE), organized by Counterclaim-Defendant ASA, defaming NTP's business by falsely accusing it of "posing as an official travel agent of NACE" and cautioning exhibitors to refrain from doing business with NTP.  The text of the email was as follows:

> We've been notified that a company posing as an official travel agent of NACE --- **National Travel Planners** --- has been contacting NACE exhibitors saying that NACE housing blocks are close to selling out and are pushing exhibitors to book rooms for the 2007 event now.  **National** Travel Planners is NOT affiliated with NACE --- Our official travel agent is **Travel Planners, Inc.**
>
> Should you receive a call, **<u>DO NOT</u>** provide this company with your credit card information. We will officially notify you by email when NACE 2007 housing opens – which is usually in mid-May.

112.   Another act of defamation of which NTP is aware occurred when Plaintiff and Counterclaim-Defendants SSP and SACP posted and/or caused to be posted on the internet statements that NTP is engaged in "false and fraudulent housing claims."  An example of one such written statement published by Plaintiff and Counterclaim-Defendants SSP and SACP appears at the "Exhibitor Hotel Reservation Procedures" website (http://www.pittcon.org/exhibitor/pdf/2008_Exh_Hotel_Res_Procedures.pdf) of the 2008 PITTCON conference website (www.pittcon.org), organized by Counterclaim-Defendants SSP and SACP.  A copy of this website page is attached as the last page of Exhibit J.

113.   In the defamatory statement attached as the last page of Exhibit J, posted by Plaintiff and Counterclaim-Defendants SSP and SACP on the PITTCON website, Plaintiff, SSP and SACP refer to NTP as an "unscrupulous travel agency" and accuse NTP of "deliberately trying to create confusion".

114.  The statement attached as the last page of Exhibit J contains false, fraudulent and defamatory accusations concerning NTP, including: (1) that NTP is unscrupulous"; (2) that NTP is "deliberately trying to create confusion"; (3) conveying such information in an apparent "official" manner to falsely suggest to consumers that they need to be alerted to and on guard for some alleged wrongdoing by NTP; (4) falsely indicating that Plaintiff has some "official" authority to provide hotel-booking services to consumers, whereas NTP does not have such authority; and (5) falsely advising consumers that "[i]t is not in your best interest to book rooms through these companies."

115.  The statements made about NTP by Plaintiff and Counterclaim-Defendants IACP, ASA, SSP and SACP, including the content of the written statement contained in Exhibits H and J and the email quoted at Paragraph 111 above are false, fraudulent and defamatory, and are libelous *per se*.

116.  Plaintiff's and Counterclaim-Defendants' verbal and written communications described above contain false, disparaging and defamatory statements about NTP, statements which have been understood by the recipients to accuse NTP of being a phony operation, a scam, of engaging in unethical, fraudulent and unscrupulous business practices, and of offering less desirable travel services than Plaintiff -- when, in fact, none of these things is true.  Plaintiff's and Counterclaim-Defendants statements are also clearly false and defamatory because NTP has the unqualified right to promote its travel-related services to anyone.

117.  As a result of the defamatory statements published by Plaintiff and Counterclaim-Defendants IACP, ASA, SSP and SACP, actual and potential customers of NTP, who have seen the emails and websites containing these defamatory statements, have understood them to be accusing NTP of improper conduct, of being a scam and a fraud, and have declined to do business with NTP.

118.  For instance, NTP has received an email from one of NTP's lost customers, The Hammock Source, who, after seeing the defamatory content posted on the internet by Plaintiff and Counterclaim-Defendants, canceled reservations with NTP and sent NTP an email in which it threatened to take legal action:

> I would appreciate written notification ASAP that your company has not booked our rooms and will not be charging our credit card, per our recent conversation.  I have done several days of research during the past week about your company and am prepared to contact local and federal legal authorities if necessary.

119.  As a direct and proximate result of the defamatory statements posted on the internet by Plaintiff and Counterclaim-Defendants, NTP's reputation has been injured and NTP has suffered special damages.  For instance, NTP has lost hundreds of actual and potential customers, who have refused to use NTP's services based on the defamatory statements posted on the internet by Plaintiff and Counterclaim-Defendants.  According to these actual and potential customers, none would use NTP's services because they viewed the defamatory content posted on the internet by Plaintiff and/or Counterclaim-Defendants and, as a result: (1) refused to use NTP's services; or (2) cancelled all reservations they had with NTP; or (3) refused to use NTP's services for their future travel needs.

120.  More specifically, a list of NTP's actual and potential lost customers relating to the 2007 IACP conference is attached hereto as **Exhibit K.**  A list of NTP's actual and potential lost customers relating to the 2007 NACE trade show is attached hereto as **Exhibit L.**  A list of NTP's actual and potential lost customers relating to the 2008 PITTCON conference is attached hereto as **Exhibit M.**

121.  After seeing Plaintiff's and Counterclaim-Defendants' websites and emails described above, NTP's above-identified actual and potential customers understood such statements to be accusing NTP of engaging in unethical business practices.  Based on the

statements, NTP's actual and potential customers believed that NTP had acted improperly in connection with its travel service business.

122.  The above-described defamatory statements made by Plaintiff and Counterclaim-Defendants were false and defamatory in accusing NTP of unlawful and/or unethical behavior and were not in any way privileged.

123.  At the time that these false statements were made, Plaintiff and Counterclaim-Defendants were motivated by actual malice and knew that the statements were false and untrue, or that such statements were made with reckless and wanton disregard for their truth or falsity. Plaintiff and Counterclaim-Defendants were fully aware that NTP has the lawful right to provide hotel reservation services to anyone, including exhibitors and attendees of trade shows and conventions organized by Plaintiff and Counterclaim-Defendants IACP, ASA, SSP and SACP.

124.  As a direct and proximate result of the defamatory statements posted on the internet by Plaintiff and Counterclaim-Defendants, NTP has also suffered damages in the form of attorneys' fees, and has thus far incurred $20,000 in such fees directed to combating the defamatory conduct of Plaintiff and Counterclaim-Defendants.

125.  Accordingly, NTP has suffered damages in an amount to be determined in accordance with proof at trial, including but not limited to lost business opportunities, increased sales expenses and expenses in correcting Plaintiff's defamatory statements.

126.  Plaintiff's and Counterclaim-Defendants tortious conduct was and is willful and malicious.  Accordingly, NTP is entitled to recover exemplary damages against Plaintiff and Counterclaim-Defendants in an amount to be determined in accordance with proof at trial.

## COUNT IV
## (AGAINST PLAINTIFF AND ALL COUNTERCLAIM-DEFENDANTS)

### DEFAMATION – TRADE LIBEL

127.  NTP repeats and realleges each and every allegation contained in paragraphs 63 through 126 above as if more fully set forth herein.

128.  Plaintiff's and Counterclaim-Defendants libelous statements to third parties, as described in detail in Paragraphs 91-126 above, were reasonably understood to impugn the legitimacy, quality and performance of NTP and its services by asserting, *inter alia,* that NTP is fraudulent, a scam and untrustworthy.

129.  Plaintiff's and Counterclaim-Defendants statements calling into question the NTP's legitimacy, and the quality of its services were false and made with knowledge of their falsity.

130.  Plaintiff and Counterclaim-Defendants were motivated by actual malice and knew that these statements were false and untrue, or that such statements were made with reckless and wanton disregard for the truth or falsity of the statements.

131.  As a direct and proximate result of the fraudulent statements by Plaintiff and Counterclaim-Defendants, NTP has lost substantial actual and potential business, as described above, suffered increased expenses in selling its services, expenses in correcting Plaintiff's and Counterclaim-Defendants' defamatory statements, and continues to experience a loss of potential and actual business, a loss of goodwill and business reputation, other economic loss, and special damages, as described above.

132.  Plaintiff's and Counterclaim-Defendants' tortious conduct was and is willful and malicious.  Accordingly, NTP is entitled to recover exemplary damages against Plaintiff and Counterclaim-Defendants in an amount to be determined in accordance with proof at trial.

133. Plaintiff's and Counterclaim-Defendants' false, fraudulent and defamatory statements concerning NTP have damaged NTP in that NTP has lost business as a result of these statements and has suffered injury to its reputation.

134. NTP has no adequate remedy at law.

## COUNT V
## (AGAINST PLAINTIFF AND ALL COUNTERCLAIM-DEFENDANTS)

### VIOLATION OF SECTION 43(a) OF THE LANHAM ACT

135. NTP repeats and realleges each and every allegation contained in paragraphs 63 through 134 above as if more fully set forth herein.

136. The above-described statements and representations made by Plaintiff and Counterclaim-Defendants of and concerning NTP, include, but are not limited to, advertising, publishing, disseminating and communicating false and misleading statements and unfounded misrepresentations about the business, goodwill, and reputation of NTP, including false statements that NTP is engaged in fraudulent practices, is a scam, and is deliberately trying to create confusion.

137. Plaintiff and Counterclaim-Defendants have also published false statements concerning the quality of Plaintiff's services. In particular, Plaintiff's promotional and advertising materials posted on the websites contained in Exhibits H-J contain false assurances and false representations concerning Plaintiff's services. As an example, Plaintiff's promotional material, as posted by each of the Counterclaim-Defendants falsely indicates that no cancellation fees are charged. However, cancellation fees may, in fact, be charged despite the contrary assurance contained in Plaintiff's promotional literature. Furthermore, Plaintiff and Counterclaim-Defendants falsely assure consumers of superior hotel and room availability and lower rates. These representations are also false.

138.  The aforementioned false statements and representations of and concerning NTP and Plaintiff's services, were published, disseminated, or otherwise communicated by Plaintiff and Counterclaim-Defendants.

139.  The aforementioned false statements and representations made by Plaintiff and Counterclaim-Defendants of and concerning NTP, and concerning Plaintiff's services, were published, disseminated, or otherwise communicated by Plaintiff and Counterclaim-Defendants across state borders and in interstate commerce.

140.  The aforementioned false statements and representations made by Plaintiff and Counterclaim-Defendants of and concerning NTP, and concerning Plaintiff's services, were statements and representations of a commercial nature and constituted commercial speech since they were published, disseminated, or otherwise communicated with the intent of increasing Plaintiff's and Counterclaim-Defendants' sales and/or decreasing NTP's sales.

141.  The aforementioned statements and acts actually deceived and had a tendency to deceive a substantial segment of the intended audience of potential and actual customers and consumers.  These false, misleading, and disparaging statements and the deceptions practiced influenced the purchasing decisions of actual and potential customers and consumers of NTP's services.

142.  NTP has been injured as a direct and proximate result of Plaintiff's and Counterclaim-Defendants' conduct.  NTP suffered a diversion of its sales from itself to Plaintiff as well as injury to the goodwill and reputation that NTP and its products enjoy with the buying public.

143.  The publication of these false and deceptive statements and the other acts and conduct of Plaintiff and Counterclaim-Defendants as alleged above, constitutes false and

deceptive trade practices in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), which caused harm and damage to NTP's business and products.

144.  As a result of Plaintiff's and Counterclaim-Defendants' conduct, NTP has suffered damages in an amount to be proven at trial.

145.  Plaintiff and Counterclaim-Defendants deliberately, willfully, and in bad faith committed the aforementioned violations of the Lanham Act.  The aforesaid conduct of Plaintiff and Counterclaim-Defendants constitutes an exceptional case under 15 U.S.C. §1117(a).  NTP is therefore entitled to recover enhanced damages and reasonable attorneys' fees incurred in this action.

## COUNT VI
### (AGAINST PLAINTIFF AND ALL COUNTERCLAIM-DEFENDANTS)

### TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS

146.  NTP repeats and realleges each and every allegation contained in paragraphs 63 through 145 above as if more fully set forth herein.

147.  At all relevant times, NTP had and has valid agreements with its customers relating to travel services.

148.  Upon information and belief, at all relevant times, Plaintiff and Counterclaim-Defendants had and have actual knowledge of NTP's valid agreements with its customers.

149.  Upon information and belief, Plaintiff and Counterclaim-Defendants intentionally interfered with NTP's valid agreements with its customers by inducing those customers to breach their agreements with NTP by the defamatory and libelous and false advertising practices described above.

150.  As a result of Plaintiff's and Counterclaim-Defendants' intentional interference with the NTP's customer agreements, NTP has been damaged.

151.  The conduct of Plaintiff and Counterclaim-Defendants as described herein constituted, and continues to constitute, intentional interference with NTP's existing contractual relations.

## COUNT VII
### (AGAINST PLAINTIFF AND ALL COUNTERCLAIM-DEFENDANTS)

### TORTIOUS INTERFERENCE WITH
### PROSPECTIVE ADVANTAGEOUS BUSINESS RELATIONSHIP

152.  NTP repeats and realleges each and every allegation contained in paragraphs 63 through 151 above as if more fully set forth herein.

153.  By virtue of its reputation, NTP developed valuable business relationships with its customers.  A prospective advantageous business relationship exists between NTP and its customers and prospective customers.

154.  Plaintiff and Counterclaim-Defendants are and were aware of the prospective business relationship that exists between NTP and its customers, and between NTP and its potential customers.

155.  Despite knowledge of the foregoing, Plaintiff and Counterclaim-Defendants have threatened to interfere, have interfered, and continue to interfere with NTP's prospective business relationship with its customers and potential customers by publishing the above-referenced libelous and untrue statements to actual and prospective customers of NTP.

156.  The acts of Plaintiff and Counterclaim-Defendants were intentional and carried out for the purpose of disrupting NTP's prospective advantageous business relationship with its customers and/or potential customers.

157.  As a direct and proximate result of Plaintiff's and Counterclaim-Defendants' conduct, NTP has suffered irreparable harm and will continue to suffer irreparable harm, which cannot be adequately redressed at law, unless Plaintiff and Counterclaim-Defendants are

enjoined from engaging in any further tortious interference with NTP's prospective

advantageous business relationships.

158.  As a direct and proximate result of Plaintiff's and Counterclaim-Defendants'

conduct, NTP has suffered damages, including the loss of customers and/or potential customers,

the loss of goodwill and business reputation, and other economic loss.

159.  Plaintiff's and Counterclaim-Defendants' tortious conduct was and is willful and

malicious. Accordingly, NTP is entitled to recover exemplary damages against Plaintiff and

Counterclaim-Defendants in an amount to be determined in accordance with proof at trial.

## COUNT VIII
### (AGAINST PLAINTIFF AND ALL COUNTERCLAIM-DEFENDANTS)

### <u>UNFAIR COMPETITION</u>

160.  NTP repeats and realleges each and every allegation contained in paragraphs 63

through 158 above as if more fully set forth herein.

161.  The acts described above constitute unfair competition in violation of the laws of

the State of New York.  These acts include, but are not limited to: (a) libel per se; (b) trade libel;

(c) threatening to release further disparaging statements about NTP to its customers and potential

customers; (d) Plaintiff's current attempt to enforce a trademark it knows to be invalid for the

reasons alleged in Paragraphs 68 through 77 above; and (e) tortious interference with contract

and prospective advantageous business relations.

162.  As a direct and proximate result of Plaintiff's misconduct, NTP has been greatly

damaged.

163.  Plaintiff's and Counterclaim-Defendants' tortious conduct was and is willful and

malicious.  Accordingly, NTP is entitled to recover exemplary damages against Plaintiff and

Counterclaim-Defendants in an amount to be determined in accordance with proof at trial.

**COUNT IX**
**(AGAINST PLAINTIFF AND ALL COUNTERCLAIM-DEFENDANTS)**

**DECEPTIVE TRADE PRACTICES**

164.  NTP repeats and realleges each and every allegation contained in paragraphs 63

through 163 above as if more fully set forth herein.

165.  Plaintiff's and Counterclaim-Defendants' conduct, as described above, constitutes

unlawful deceptive acts or practices and false advertising in the conduct of Plaintiff's and

Counterclaim-Defendants' business in violation of New York General Business Law §§349 and

350.

166.  NTP has been, and will continue to be, injured by Plaintiff's and Counterclaim-

Defendants' deceptive acts and practices.

167.  NTP is entitled to recover three times its actual damages a attorney's fees pursuant

to New York General Business Law § 349(h).

**COUNT X**
**(AGAINST PLAINTIFF AND ALL COUNTERCLAIM-DEFENDANTS)**

**PER SE VIOLATION OF THE SHERMAN ACT**

168.  NTP repeats and realleges each and every allegation contained in paragraphs 63

through 167 above as if more fully set forth herein.

169.  Upon information and belief, beginning prior to 2003 and continuing until the

present, Plaintiff and various other entities, including all named Counterclaim-Defendants, have

together engaged in one or more unlawful contracts, combinations, or conspiracies in restraint of

interstate trade and commerce, in violation of Section 1 of the Sherman Act.

170.  The combinations and conspiracies consisted of continuing agreements,

understandings, or concert of action between Plaintiff itself, the other named Counterclaim-

Defendants, and at least one or more additional organizations and/or entities, the substantial

terms of which were to prevent third parties from competing with the Plaintiff and Counterclaim-

Defendants in providing travel-related services to members of the consuming public, including

exhibitors and attendees at conventions and trade shows, organized by Counterclaim-Defendants.

Such combinations or conspiracies unreasonable restraints of trade in violation of Section 1 of

the Sherman Act.

171.  For the purpose of forming, effectuating, and furthering the conspiracies, Plaintiff

and its co-conspirators, including all named Counterclaim-Defendants, did those things which

they combined, agreed, and conspired to do, as among other things, (1) engage in acts of slander,

libel per se, trade libel, unfair competition and false advertising to mislead consumers into

believing that they would be victimized if they contracted for the purchase of travel services

from entities other than Plaintiff; and (2) undertake retaliatory action against consumers who

refused to comply with the demands of Plaintiff and/or Counterclaim-Defendants and other co-

conspirators, such as terminate and threaten to terminate pre-existing contractual relationships

with such consumers or provide less desirable services to those who do not consistently use

Plaintiff's services.

172.  Each of the aforesaid unlawful contracts, combinations and conspiracies by

Plaintiff/Counterclaim-Defendant and its co-conspirators, including all named Counterclaim-

Defendants, had the following effects, among others:

a.      The retail purchase price for travel services, namely hotel booking services for

conventions and trade shows, was fixed, raised, maintained or stabilized at artificial non-

competitive levels;

b.      Price competition among retailers and wholesalers for the sale of hotel booking

services and related services was restrained; and

c.     Purchasers of hotel booking services were denied the benefits of free and open competition among retail and wholesale providers of such services retailers and, as a result, paid more for such services than they would have in a competitive market.

173.  NTP and others are threatened with further imminent and irreparable injury to their businesses unless Plaintiff and Counterclaim-Defendants are enjoined from their illegal conduct.

## COUNT XI
## (AGAINST PLAINTIFF AND ALL COUNTERCLAIM-DEFENDANTS)

## RULE OF REASON VIOLATION OF SECTION 1 OF THE SHERMAN ACT

174.  NTP repeats and realleges each and every allegation contained in paragraphs 63 through 173 above as if more fully set forth herein.

175.  Upon information and belief, beginning prior to 2003 and continuing until the present, Plaintiff and various other entities, including all named Counterclaim-Defendants, have together engaged in one or more unlawful contracts, combinations, or conspiracies in restraint of interstate trade and commerce, in violation of Section 1 of the Sherman Act.

176.  The combinations and conspiracies consisted of continuing agreements, understandings, or concert of action between Plaintiff itself, all named Counterclaim-Defendants, and at least one or more additional organizations and/or entities, the substantial terms of which were to prevent third parties from competing with the Plaintiff in providing travel-related services to members of the consuming public, including exhibitors and attendees at conventions and trade shows, organized by the other named Counterclaim-Defendants.  Such combinations or conspiracies unreasonable restraints of trade in violation of Section 1 of the Sherman Act.

177.  For the purpose of forming, effectuating, and furthering the conspiracies, Plaintiff and its co-conspirators, including all named Counterclaim-Defendants, did those things which they combined, agreed, and conspired to do, as among other things, (1) engage in acts of slander,

libel per se, trade libel, unfair competition and false advertising to mislead consumers into believing that they would be victimized if they contracted for the purchase of travel services from entities other than Plaintiff; and (2) undertake retaliatory action against consumers who refused to comply with the demands of Plaintiff and/or Counterclaim-Defendants and other co-conspirators, such as terminate and threaten to terminate pre-existing contractual relationships with such consumers, or provide less desirable services to those who do not consistently use Plaintiff's services.

178.   Each of the aforesaid unlawful contracts, combinations and conspiracies by Plaintiff/Counterclaim-Defendant and its co-conspirators, including Counterclaim-Defendants, had the following effects, among others:

a.      The retail purchase price for travel services, namely hotel booking services for conventions and trade shows, was fixed, raised, maintained or stabilized at artificial non-competitive levels;

b.      Price competition among retailers and wholesalers for the sale of hotel booking services and related services was restrained; and

c.      Purchasers of hotel booking services were denied the benefits of free and open competition among retail and wholesale providers of such services retailers and, as a result, paid more for such services than they would have in a competitive market.

179.   NTP and others are threatened with further imminent and irreparable injury to their businesses unless Plaintiff and all named Counterclaim-Defendants are enjoined from their illegal conduct.

## DEMAND FOR JURY TRIAL

180.   NTP hereby demands a trial by jury for all issues so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE,** NTP prays for judgment against Plaintiff and Counterclaim-Defendants as follows:

1. Dismissing Plaintiff's Complaint;

2. Sustaining NTP's Affirmative Defenses;

3. Awarding declaratory relief to NTP that:

   a. Plaintiff has no protectable rights in the generic designation TRAVEL PLANNERS;

   b. Plaintiff has not demonstrated secondary meaning in the designation TRAVEL PLANNERS;

   c. NTP has not infringed any rights of Plaintiff.

   d. Plaintiff is without right or authority to threaten or maintain suit against NTP for infringement of any of its registered or unregistered trademarks;

   e. Plaintiff, and those in active concert or participation with Plaintiff who receive actual notice thereof, are permanently enjoined from initiating trademark patent litigation against NTP, or threatening NTP or any of its customers, dealers, suppliers, licensees, agents, servants, or employees, or any prospective or present sellers, dealers, suppliers, licensees, distributors, or customers of NTP or users of NTP's services, with trademark infringement litigation based on any of the allegations contained in Plaintiff's Complaint, or charging any of them either verbally or in writing with infringement of any of Plaintiff's rights;

   f. Declaring that this is an exceptional case and awarding NTP its attorneys' fees;

    g.   Awarding NTP its costs; and

    h.   Awarding NTP such other and further relief as this Court may deem just and equitable.

4.   That Plaintiff and Counterclaim-Defendants be temporarily, preliminarily, and permanently enjoined from making any further defamatory statements about NTP or its products and/or services.

5.   That Plaintiff and Counterclaim-Defendants be ordered to pay NTP such monetary damages and punitive damages as may be determined at trial for the defamatory remarks already made.

6.   That Plaintiff and Counterclaim-Defendants be temporarily, preliminarily, and permanently enjoined from interfering with NTP's prospective advantageous business relationships.

7.   That Plaintiff and Counterclaim-Defendants be ordered to pay NTP such monetary damages and punitive damages as may be determined at trial for the intentional interference with advantageous business relationships that already occurred.

8.   That Plaintiff and Counterclaim-Defendants be temporarily, preliminarily, and permanently enjoined from further engaging in unfair competition or deceptive acts.

9.   That Plaintiff and Counterclaim-Defendants be ordered to pay NTP such monetary damages and punitive damages as may be determined at trial for the unfair competition and deceptive acts it has already perpetrated.

10.  That Plaintiff and Counterclaim-Defendants be ordered to pay NTP such monetary damages as may be determined at trial for consumers' breach of their agreements with NTP based on defamatory statements made by Plaintiff and Counterclaim-Defendants.

11. That Plaintiff be awarded damages and its reasonable attorney's fees pursuant to New York General Business Law § 349(h).

12. Adjudging and decreeing that Plaintiff and each of the Counterclaim-Defendants has engaged in unlawful contract, combination or conspiracy in violation of Section 1 of the Sherman Act;

13. Adjudging and decreeing that Plaintiff and each of the Counterclaim-Defendants has engaged in anticompetitive activities proscribed by N.Y. Gen. Bus. Law §§340 et seq.;

14. Entering a judgment in favor of Defendant NTP for threefold the damages determined to have been sustained as a result of Plaintiff's and each of the Counterclaim-Defendants' violations of the above-referenced federal and state antitrust laws;

15. Enter judgment against Plaintiff and Counterclaim-Defendants for the maximum civil penalty allowed under the above-referenced statutes;

16. Enjoining and restraining the Plaintiff and each of the Counterclaim-Defendants, their officers, directors, agents, employees, and all those in active concert or participation with them who receive actual notice of the judgment by personal service or otherwise, from, in any manner, directly or indirectly, maintaining or renewing the aforesaid unlawful contracts or any concert of action having similar purpose or effect, and from adopting or following any practice, plan, program or design having a similar purpose or effect;

17. An assessment of interest on the damages so computed.

18. Such other and further relief as this Court deems just and proper.

Dated: June 25, 2007                    Respectfully submitted,

                                        LAW OFFICES OF BRUCE D. KATZ &
                                        ASSOCIATES


                                        By: ___/s/ Bruce D. Katz_____
                                            Bruce D. Katz, Esq.
                                            225 Broadway – 37th Floor
                                            New York, NY 10007
                                            (212)233-3434

                                            *Attorneys for Defendant/*
                                            *Counterclaim-Plaintiff*
                                            CGI of Nevada, Inc.
                                            (d/b/a National Travel Planners)